## LUELLA H. DUNTON *vs.* RALPH H. DUNTON.

### Sagadahoc.    Opinion November 24, 1923.

*The maxim, " He who comes into equity must come with clean hands," observed, and the doors of the equity court closed against the plaintiff.*

In this case the sitting Justice found that the defendant did receive and have in his possession fifty bonds belonging to the plaintiff and ordered him to account to her for them.

Upon the evidence this finding cannot be sustained. Either the defendant had sixty-seven bonds belonging to the plaintiff or he only received forty bonds from the source alleged by plaintiff and which were his own property.

Regardless of the number, it follows from the evidence that either the bonds in question were a gift to the plaintiff and received with the knowledge and consent of the defendant or were delivered to the defendant as his property in consequence of a threat of prosecution for alleged seduction of the plaintiff and the alienation of her affections,

The testimony of the plaintiff as to the circumstances under which the bonds were alleged to have been given to her is so inherently improbable that any decree based upon it in the face of any opposing testimony cannot be said to have any substantial evidence to support it.

Either the bonds in question were given to the husband in settlement of a valid claim or both he and the plaintiff were guilty of a threat of blackmail and of extortion, or the bonds were a gift to the wife, induced by relations condoned and winked at by the defendant.

Upon the first assumption the bonds are the sole property of the husband, and upon either of the other assumptions the plaintiff does not come into this court with clean hands. Another court may adjust the relations between these parties, but upon the evidence presented, a Court of Equity will not dip its hands in the slime.

On appeal. A bill in equity brought by plaintiff against her husband to recover seventy-five thousand dollars worth of bonds in the possession of her husband, alleged to be the property of plaintiff, and also to have the husband declared trustee as to certain real estate standing in his name and alleged to have been purchased by him with funds belonging to the wife.

A hearing was had upon bill, answer and proofs, and the sitting Justice entered a decree sustaining the bill and found that plaintiff was the owner of fifty $1,000 State of New York Canal Improvement $4\frac{1}{4}\%$ Bonds, and also certain real estate, as set forth in the plaintiff's bill, now in the name, possession and control of defendant. Defendant entered an appeal. Appeal sustained. Decree of sitting Justice reversed. Bill dismissed.

The case is fully stated in the opinion.

*Frank A. Morey and Walter S. Glidden*, for plaintiff.

*William R. Pattangall and Ralph O. Dale*, for defendant.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, MORRILL, WILSON, DEASY, JJ.

WILSON, J. A bill in equity brought by a wife against her husband under Sec. 6, Chap. 66, R. S., to recover certain personal property in the possession of the husband and alleged to be the property of the wife, and also to have the husband declared trustee as to certain real estate standing in his name and alleged to have been purchased by him with funds belonging to the wife.

The cause was heard below and a decree entered by the sitting Justice upholding the contentions of the plaintiff except as to the amount of the property claimed by her, from which decree the defendant appealed to this court.

The plaintiff and defendant were married in 1903. In 1909, the plaintiff was introduced to a man of wealth and prominence in whose office her husband was employed, who apparently became infatuated with her and bestowed upon her from time to time presents of considerable value, and for nearly six years, a regular monthly stipend of two hundred dollars. In 1915, influenced by some motive, he delivered to the defendant either for the plaintiff or the defendant a large sum of money in the form of securities. The reason for the transfer of the securities, for whom intended and the amount being in dispute are the issues in these proceedings.

The plaintiff alleges and testified that in March, 1915, at a prearranged meeting in a room in a hotel in Portland, her admirer in the presence of and with the consent of her husband for no reason except his friendship for her and because of the serious malady with which he was then afflicted and from which he did not expect to recover, proposed to transfer to her on his return from a trip of several months which he was then about to undertake on account of his health, property to the amount of seventy-five thousand dollars; that on his return four months later in July, 1915, he delivered certain securities to her husband which were deposited in a safety deposit box taken in her husband's name, where they were kept until her husband disposed of some of them and applied the proceeds to the purchase of certain real estate, of which she now seeks by her bill of complaint to have him adjudged trustee for her benefit.

The defendant on the other hand charges her wealthy admirer with the intent of seducing his wife and the alienation of her affections, if criminal relations had not already and for a long time existed between them, and says that instead of his presence at the hotel in March, 1915, being prearranged, he surprised them and discovered conditions that conclusively indicated that his wife, if not already on terms of criminal intimacy with this man, was at least about to yield to his solicitations; and that after a discussion of the situation in which prosecution was threatened, the seducer of his wife assuaged his injured feelings by agreeing to pay him a large sum of money to keep the matter quiet, or, at least agreed to "make it right" on

return from a proposed trip, which he did by finally arranging to pay forty thousand dollars, and in fulfillment of this agreement purchased and turned over to the defendant forty bonds of the denomination of one thousand dollars each, though in fact their cost and market value considerably exceeded forty thousand dollars.

The sitting Justice apparently did not find from the evidence that the story of either of the parties was true in all respects, but found that the defendant did receive fifty bonds intended for the plaintiff and not seventy-five as claimed by her and which the court by its decree in effect orders the defendant to account for.

Giving to the findings of fact by the sitting Justice their usual effect, we think such a decree cannot stand upon the evidence submitted. Either she received or her husband received for her at least sixty-seven bonds as shown by a certain memorandum in the case, which at their market price, together with certain other items, made a total of seventy-five thousand dollars, or the defendant received forty bonds of the market value of about forty-four thousand dollars as "hush money."

Even if her story of what occurred at the hotel and the occasion for the meeting there were susceptible of belief, there is no basis for holding that she received only fifty bonds. It is unnecessary to discuss in detail the improprieties of the relations between these parties. Sufficeth it to say, that the reasons assigned by the plaintiff for the gift of so large a sum to her in consideration of the relations alleged to have existed are so inadequate and her story of the entire affair so inherently improbable, that in the face of opposing evidence a finding based upon it may be said to be without any substantial evidence to support it.

Without commenting upon, or deciding, whether the testimony of the defendant is any more credible, it may be safely said that either it is substantially true, or that both he and the plaintiff were guilty of a conspiracy to blackmail and of extortion, and that the funds sought to be recovered in these proceedings are the fruits of their unlawful acts, or were a gift induced by relations winked at and condoned by the defendant.

Upon either assumption the plaintiff can obtain no relief in this court. In the first instance the husband claims the securities were transferred to him in settlement of a valid claim for the seduction

of his wife and the alienation of her affections. Upon either of the other assumptions the plaintiff cannot be said to come into this court with clean hands.

After living together for seven years since the incident at the hotel, in complete harmony, during which time a child has been born to them, it now appears that these proceedings have followed a separation and charges and counter charges constituting grounds for divorce. A court having jurisdiction over divorce after determining the truth of such charges may settle the future status of these parties and make such decrees as to property as may be just and proper.

Upon the evidence here presented, however, a Court of Equity will not dip its hands in the slime.

> *Appeal sustained.*
> *Decree of sitting Justice reversed.*
> *Bill dismissed.*